# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

SARAH C.,[1]

        Plaintiff,

    v.

FRANK BISIGNANO,[2]
        Defendant.

CIVIL ACTION NO. 1:23-cv-01828

(Magistrate Judge Latella)

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Sarah C.'s claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). For the reasons

---

[1]To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).
[2]"In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985) (citing Fed. R. Civ. P. 25(d)(1)). Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Accordingly, we have substituted him as the Defendant in this action.

1

expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be remanded.

## I.     <u>**Background and Procedural History**</u>

On June 15, 2021, Plaintiff Sarah C. filed an application for Title II benefits. (Doc. 1 at 2). In that application, Plaintiff claimed disability beginning December 13, 2020. (*Id.*). The Social Security Administration initially denied Plaintiff's claims on October 21, 2021. (*Id.*). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on January 25, 2022. (*Id.*). ALJ Gerard Langan conducted the requested hearing on May 6, 2022. (*Id.*).

In a written opinion dated August 23, 2022, the ALJ determined that Plaintiff is not disabled and therefore not entitled to the benefits sought. (*Id.*). Plaintiff appealed the ALJ's decision to the Appeals Council which, on August 31, 2023, denied Sarah C.'s request for review. (*Id.*). On November 2, 2023, Plaintiff filed the instant action. (*See* Doc. 1). The Commissioner responded on December 14, 2023, providing the requisite transcripts from the disability proceedings on the same date. (Doc. 6; Doc. 7). The parties then filed their respective briefs, (Doc. 12; Doc. 16; Doc. 21), with Plaintiff alleging three errors that warrant reversal or remand. The parties consented to proceed before a Magistrate Judge on February 20, 2024, (Doc. 11), and this case was reassigned to the undersigned on June 10, 2025.

## II.    The ALJ's Decision

In a decision dated August 23, 2022, the ALJ determined that Sarah C. "has not been under a disability, as defined in the Social Security Act, from December 13, 2020, through the date of this decision." (Tr. 31). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ determined that Sarah C. met the insured status requirements of the Social Security Act through September 30, 2025. (Tr. 18).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. The ALJ determined that Sarah C. "has not engaged in [SGA] since December 13, 2020, the alleged onset date." (Tr. 20). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does

3

not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

At step two, the ALJ found that Sarah C. "has the following severe impairments: Psychogenic Non-Epileptic Seizures (PNES); major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and morbid obesity." (Tr. 21). The ALJ also identified Sarah C.'s non-severe impairments as substance abuse disorder, from which she is currently in remission, and migraine headaches. (*Id.*).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that none of Sarah C.'s impairments, considered individually or in combination, met or equaled a Listing. (Tr. 21). Specifically, the ALJ considered Listings 11.02 (Epilepsy), 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-

4

compulsive disorders), 12.07 (Somatic symptoms and related disorders) and 12.15

(Trauma- and stressor-related disorders). (Tr. 21–22).

Between steps three and four, the ALJ determines the claimant's residual

functional capacity ("RFC"), crafted upon consideration of the medical evidence

provided. The ALJ determined that Sarah C.:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should avoid unprotected heights and industrial machinery. The claimant should avoid climbing ladders and scaffolds. The claimant is limited to occasional exposure to vibration, temperature extremes, wetness, and environmental irritants. The claimant should avoid noise above level 3 noise intensity level. The claimant should avoid occupations performed on or near bodies of water. The claimant is able to understand, retain, and carry out routine, repetitive tasks with few workplace changes. The claimant is limited to occasional decision-making. The claimant should avoid interaction with the public, except for incidental contact. The claimant is limited to occasional interaction with co-workers and supervisors.

(Tr. 24).

Having assessed a claimant's RFC, at step four the ALJ must determine

whether the claimant has the RFC to perform the requirements of their past

relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still

perform past relevant work requires a determination that the claimant is not

disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the

claimant has done within the past 15 years, that was substantial gainful activity,

and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §

5

404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined that Sarah C. is unable to perform past relevant work. (Tr. 30). The ALJ noted past relevant work as a sandwich maker and fast food manager, but that the exertional requirements of each exceeded Sarah C.'s RFC. (*Id.*).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If the claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ made vocational determinations that Sarah C. was 22 years old on the alleged onset date, defined as a younger individual age 18–49 by the Regulations. 20 C.F.R. 404.1563. (Tr. 30). The ALJ also noted that Sarah C. has at least a high school education and is able to communicate in English, as considered in 20 C.F.R. § 404.1564. (*Id.*). The ALJ determined that upon consideration of these factors, Sarah C.'s RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*). The ALJ specifically identified occupations of Folder, Marker, and

Addresser. (Tr. 31). As a result of this analysis, the ALJ determined that Sarah C. was not disabled and denied her application for benefits. (*Id.*).

## III.    Standard of Review

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or

equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(b)(3).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Sarah C. is disabled, but whether the Commissioner's finding that Sarah C. is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law

to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.   **Discussion**

Sarah C. argues that the ALJ erred in three ways. First, she claims that the ALJ's mental residual functional capacity ("RFC") lacked evidentiary support. (Doc. 12, p. 1). Second, she argues that the ALJ failed to properly evaluate her seizures. (*Id.*). And third, she argues that "the ALJ's multiple errors with symptom evaluation compel reversal." (*Id.*).

In response, the Commissioner maintains that the ALJ articulated the substantial evidence he considered in assessing the claimant's RFC, including Sarah C.'s normal mental status examinations, the success in treating her symptoms, and her ability to perform routine, repetitive activities of her daily life, along with a finding that she only had a moderate limitation in any area of mental functioning. (Doc. 16, pp. 14–18). The Commissioner also states that the ALJ's evaluation of the Plaintiff's testimony and relevant medical records constituted substantial evidence, and that the ALJ's assessment of Sarah C.'s symptom improvement was relevant and proper. (*Id.* at pp. 22–25).

A. The ALJ's Mental RFC Finding

The ALJ is tasked with assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). An RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five of the ALJ's analysis. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

The Third Circuit instructs that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected.

*Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981). Because "an ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* The ALJ need not, however, undertake an exhaustive discussion of all the evidence. *See, e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shahala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner articulates "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must

13

indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706–07. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

The crux of Sarah C.'s argument regarding the mental RFC finding is that the evidence supports a limitation to one-to-two step tasks as recommended by Dr. Roberts, whose opinion the ALJ found generally persuasive; however, the ALJ did not discuss his decision to omit that limitation and instead imposed an RFC limiting Plaintiff to carrying out routine, repetitive tasks. (Doc. 21, pp. 3–5). Despite the ALJ's otherwise thorough analysis, Plaintiff is correct that there exists an undiscussed discrepancy between the relied-upon medical records and the RFC limitations. It therefore cannot be said that the RFC is supported by substantial evidence.

14

The State agency psychological consultant, Kelly Roberts, Psy.D., opined that the claimant has mild limitations with respect to understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. (Tr. 27). She also indicated that Sarah C. has "a mild limitation with simple instructions, moderate limitations with detailed instructions, and moderate limitations in interaction with the public, co-workers and supervisors." (*Id.*). Dr. Roberts elaborated by stating that "[t]he claimant is able to carry out very short and simple instructions. The claimant would not require special supervision in order to sustain a routine. The claimant can make simple decisions." (Tr. 92). Dr. Roberts concluded that "[Sarah C.] is able to meet the basic mental demands *to complete 1-2 step tasks* on a sustained basis despite the limitations resulting from impairments." (*Id.*) (emphasis added). The ALJ agreed with this opinion, "as the mild-to-moderate mental functioning limitations are supported by and consistent with the medical evidence of record and activities of daily living previously discussed." (Tr. 27). The ALJ considered this medical opinion in his RFC assessment: "Due to the concentration, attention, and adaption deficits caused by depression, anxiety, PTSD, the RFC limits the claimant to routine, repetitive tasks with few workplace changes and occasional

15

decision-making." (Tr. 26). Notably, the ALJ failed to discuss the one-to-two step limitation recommended by Dr. Roberts.

Courts have distinguished between limitations that regard the complexity of instructions and tasks to be performed by a claimant and limitations that regard the routineness or repetitiveness of the work. "While both types of limitations may relate to a claimant's impairment as to concentration, persistence, and pace, they could very well relate to different aspects of such an impairment." *Harden v. Comm'r of Soc. Sec.*, No. CIV.A. 13-906, 2014 WL 4792294, at *5 (W.D. Pa. Sept. 24, 2014). It is therefore entirely possible that a limitation to "routine, repetitive tasks," as imposed by the ALJ in this case, is inconsistent with a limitation to one-to-two step tasks. *Id.* Because "there is a significant difference between an RFC limitation to one and two step tasks and an RFC limitation to simple, routine tasks," the error may be grounds for a remand. *Podunajec v. Saul*, No. 3:19-cv-01938, 2020 WL 7319779, at *6–7 (M.D. Pa. Dec. 11, 2020). The Court in *Simon v. Kijakazi* further explains why failing to explain the omission of the one-to-two step task limitation is erroneous:

> This limitation was a material aspect of the doctor's opinion and its unexplained absence from the RFC leaves an evidentiary void in this case. While the ALJ certainly was not required to include this limitation, the ALJ was required to explain the failure to include this limitation, particularly because the ALJ found this opinion to be generally persuasive and supported by the record.

No. 1:20-CV-02064, 2022 WL 828935, at *10 (M.D. Pa. Mar. 18, 2022); *see also Shipman v. Kizakazi*, No. 3:22-CV-00636, 2023 WL 5599607, at *9 (M.D. Pa. Aug. 29, 2023) ("[w]hile the ALJ certainly was not required to include a limitation to one-and two-step tasks, the ALJ was required to explain the failure to include this limitation, particularly because the ALJ found this opinion to be generally persuasive and supported by the record."). This is especially true here, considering that Dr. Roberts is the only mental RFC opinion that the ALJ found to be generally persuasive. *See Stine v. Kijakazi*, No. CV 21-5492, 2023 WL 3483885, at *10 (E.D. Pa. May 15, 2023) ("the ALJ's failure to mention or discuss a marked limitation in the ability to carry out detailed instructions cannot be deemed harmless under the circumstances of this case. As previously noted, the opinions of the psychiatric consultants in this regard are uncontroverted, as there are no other mental RFCs contained in the record, and the ALJ found their opinions to be partially persuasive.").

In response to Plaintiff's argument, the Commissioner cites to *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254 (3d Cir. 2014), in which an ALJ did not incorporate postural or manipulative limitations into the RFC after the ALJ had given the opinion's recommendation "significant" weight. The Court held "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole

17

'significant' weight. On the contrary, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner." *Id.* at 256. Here, however, the issue is not whether the ALJ was compelled to include the one-to-two step limitation in the RFC, but rather whether the ALJ was required to consider it after finding the opinion persuasive. Courts in this district regularly remand when a medical opinion found persuasive imposes a limitation of one-to-two step tasks, but the ALJ fails to address it in his or her RFC.[3]

---

[3] *See, e.g.*, *Warren v. Dudek*, No. 1:24-CV-635, 2025 WL 1168276, at *5 (M.D. Pa. Apr. 22, 2025) (remanding the case when the ALJ found the consulting providers' opinion, including a limitation to one-to-two step tasks, to be persuasive but instead limited the claimant to simple, routine, repetitive tasks); *Cruz v. Bisignano*, No. 1:24-CV-1966, 2025 WL 2813882, at *8 (M.D. Pa. Sept. 30, 2025) ("We therefore conclude that, when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or, (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation. We further conclude that a limitation to 'simple, repetitive tasks' is insufficient to account for a limitation to one- and two-step tasks."); *Christopher J. v. Kijakazi*, No. 4:22-CV-497, 2023 WL 6305787, at *8 (M.D. Pa. Sept. 27, 2023) (holding that opinions conflict when one imposes a one-to-two step limitation and the other imposes a limitation to routine tasks); *Stash v. Bisignano*, No. 4:24-CV-00002, 2026 WL 208347, at *3 (M.D. Pa. Jan. 27, 2026) (finding inconsistent a limitation of one-to-two step tasks and a limitation of short and simple instructions, and remanding when the ALJ failed to explain their RFC determination); *Shipman v. Kizaki*, No. 3:22-cv-00636, 2023 WL 5599607, at *8 (M.D. Aug. 29, 2023) ("In this case, the Court finds that the ALJ was required to further address or explain the decision to omit the limitation to one-or two-step tasks."); *Pokorny v. Kijazi*, No. 1:21-cv-00790, 2023 WL 6988360, at *6 (M.D. Pa. Oct. 23, 2023) (ALJ erred by neither including a limitation to one-to-two step tasks or explaining his reasoning for not doing so); and *Simon v. Kijakazi*, No. 1:20-cv-02064, 2022 WL 828935, at *9 (M.D. Pa. Mar. 18, 2022) ("We find that more of an explanation is required where an ALJ

Here, with respect to mental limitations, the RFC included a limitation that "[t]he claimant is able to understand, retain, and carry out routine, repetitive tasks with few workplace changes. The claimant is limited to occasional decision-making." (Tr. 24). While the ALJ briefly explains the rationale behind his RFC limitation, ("Due to the concentration, attention, and adaption deficits caused by depression, anxiety, PTSD, the RFC limits the claimant to routine, repetitive tasks with few workplace changes and occasional decision-making." (Tr. 26)), this limitation does not address Dr. Roberts's one-to-two step task limitation or justify the omission.

The ALJ questioned the vocational expert about available jobs for Sarah C. in the national economy based upon her RFC. (Tr. 64). Specifically, the ALJ asked:

> Okay. Let's assume further that in addition to the limitations and restrictions outlined in hypothetical number one, our hypothetical individual were able to understand, retain, and carry out routine repetitive tasks with few work place changes. Our hypothetical individual would be capable of occasional decision-making with respect to work related activities. With the instruction of those elements, would our hypothetical individual continue to be capable of performing all of the past work?

(*Id.*).

---

finds an opinion persuasive that limits the claimant to one-to-two-step tasks but fails to explain why this limitation was not included in the RFC.").

19

Thus, despite finding the opinion of Dr. Roberts persuasive, the ALJ did not incorporate the one-to-two step task limitation included in that opinion in Plaintiff's RFC or in the question posited to the vocational expert. (Tr. at 24, 64). Again, the ALJ was not required to incorporate this limitation into his RFC or into the hypothetical posited to the vocational expert, but he was required to address it and explain his determination that contrary to the finding of Dr. Roberts, Plaintiff is not limited to one-to-two step tasks. *Simon*, 2022 WL 828935, at \*10; *see also Shipman*, 2023 WL 5599607, at \*9.

The ALJ's omission of an explanation for discounting the State agency consultants' one-to-two task limitation is not harmless error in this case. The *Dictionary of Occupational Titles* ("DOT") describes the general educational development of each occupation. *Shipman*, 2023 WL 5599607, at \*9. "General educational development embraces those aspect of education (formal and informal) which are required of the worker for satisfactory job performance." *Id*. (citing DOT, Appendix C, 1991 WL 688702). The GED scale is composed of three divisions, but only one is relevant here—reasoning development. *Id*. (citing DOT, Appendix C, 1991 WL 688702). In occupations with a reasoning development level of 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or

20

from these situations encountered on the job." *Id*. (citing DOT, Appendix C, 1991 WL 688702). In occupations with a reasoning development level of 2, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*. (citing DOT, Appendix C, 1991 WL 688702).

The plain language of the DOT definition for GED Reasoning Development Level 1 suggests there is no conflict between it and a limitation to no more than one-to-two step tasks. *Id.* Accordingly, courts have found that a limitation to one-to-two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2. *Id.* at *10 (quoting *Ferrebee v. Kijakazi* No. 3:20-CV-02188, 2022 WL 905153, at *4 (M.D. Pa. Mar. 28, 2022) (collecting cases)). Because GED Reasoning Level of 2 may conflict with a limitation of one-to-two step tasks, courts typically remand where there is a conflict involving a limitation to one-to-two step tasks and the only occupations cited by a vocational expert and ALJ contain a GED Reasoning Development Level 2. *Id.* (Error was not harmless and required remand required where occupations listed by vocational expert and adopted by ALJ had GED Reasoning Development Levels of 2 or greater).

21

On the other hand, in cases where an ALJ failed to explain a decision not to incorporate a one-to-two step task limitation, but the vocational expert identified at least one job with a GED Reasoning Development Level of 1, the error has been deemed harmless with no need for remand. *See, e.g.*, *Soto v. Kijakazi*, No. 4:21-CV-1531, 2022 WL 4358087, at *11 (M.D. Pa. Sept. 20, 2022) (error was harmless and no remand required where claimant with one-to-two step task limitation would still be able to perform one of jobs identified by vocational expert with GED Reasoning Development Level of 1); *Reep v. Bisignano*, No. 1:24-CV-712, 2025 WL 1508453, at *9–10 (M.D. Pa. May 27, 2025) (finding that "the presence of an occupation with a reasoning level of one is sufficient to hold the omission of a one- or two-step task limitation from the RFC or the [vocational expert] hypotheticals, or both, as harmless.").

Here, the vocational expert indicated that Sarah C. could perform the job of Garment Folder, Marker, and Addresser Clerk. (Tr. 65). The GED Reasoning Development Level of a Folder is level 1; however, both the positions of Marker and Addresser are level 2.[4] While normally the presence of at least one position identified by the vocational expert that has a Reasoning Development Level of 1 would render the ALJ's omission harmless error, there must be a significant

---

[4]*See also* DICTIONARY OF OCCUPATIONAL TITLES, Garment Folder (DOT 789.687-066), 1991 WL 681266; Marker, (DOT 209.587-034), 1991 WL 671802; and Addresser (DOT 209.587-010), 1991 WL 671797.

number of jobs in the national economy that the claimant could perform. *Matos v. Bisignano*, No. 4:24-CV-675, 2025 WL 2918975, at *9 (M.D. Pa. Oct. 10, 2025). The Commissioner bears the burden of showing that such jobs exist. *Hoppock v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-02424, 2022 WL 1424982, at *5 (M.D. Pa. May 5, 2022) (citing 20 C.F.R. §§ 404.1512(b)(3); 416.912(b)(3)).

The vocational expert testified, and the ALJ included in his report, that there are 6,500 positions nationally for the position of folder. (Tr. 31, 65). Plaintiff argues that the ALJ made no finding that 6,500 folder jobs constitute a significant number. (Doc. 12, p. 10). Besides stating in its brief in opposition that "the ALJ found that Plaintiff could perform work existing in significant numbers in the national economy, including the representative occupations of a folder, marker, and addresser," the Commissioner does not respond to Plaintiff's assertion. (Doc. 16, p. 14).

The Third Circuit has not defined what exactly constitutes a "significant number" of jobs for the national economy. *Hoppock*, 2022 WL 1424982 at *5 (citing *Young v. Astrue*, 519 F. App'x 769, 773 (3d Cir. 2013)). In *Young*, the circuit court held that 20,000 jobs was sufficient to support a finding that there existed a significant number of positions. "Conversely, when the number of jobs identified in the national economy totals less than 10,000 positions . . . courts have frequently found that the Commissioner's burden of proving at Step 5 that jobs

existed in significant numbers in the national economy has not been met." *Matos v. Bisignano*, 2025 WL 2918975, at \*12. In *Matos*, the court found that 12,000 jobs, compounded with "the flaws in this decision and the lack of any [vocational expert] testimony regarding what jobs [plaintiff] could perform had the ALJ included a one-to-two step task limitation" demonstrated that the ALJ's error was not harmless. *Id.* Here, the fact that only 6,500 folder jobs are available nationally, without further discussion in the hearing or written decision, is therefore not enough to demonstrate that the Commissioner met its burden of showing there are significant numbers of jobs in the national economy available for Sarah C. to work.

Because there are no positions with significant numbers in the national economy with a GED Reasoning Development Level of 1 identified by the vocational expert, the ALJ's failure to explain his decision not to incorporate the one-to-two step task limitation is not harmless error. Therefore, the ALJ's decision was not supported by substantial evidence and remand is required to properly consider Dr. Roberts's identified one-to-two step task limitation.

Because it is ordered that the decision of the Commissioner is vacated and remanded for further consideration so that the ALJ may properly consider Dr. Roberts' identified limitation of one-to-two step tasks, Plaintiff's remaining arguments need not be addressed. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F.Supp.3d

24

579, 598 (M.D. Pa. 2016). Evaluation of Plaintiff's additional contentions would be futile given that the ALJ's reconsideration of Plaintiff's limitations may yield a different result.

## V.     **Remedy**

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). *See generally Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the ALJ's decision was not supported by substantial evidence, it is held that further development of the record is required, and that the decision of the Commissioner is vacated and the case is remanded.

## VI.    **Conclusion**

For the foregoing reasons, the decision of the Commissioner will be vacated, and the case will be remanded to the Commissioner for further consideration. An appropriate order follows.

25

**Dated:** March 5, 2026                    *s/ Leo A. Latella*
                                            **LEO A. LATELLA**
                                            **United States Magistrate Judge**